COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Humphreys, Chafin and Senior Judge Clements
Argued by teleconference


OSMAND G. HARRIS, JR.

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0717-15-2                      JUDGE TERESA M. CHAFIN
                                                    MAY 24, 2016

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                          Beverly W. Snukals, Judge

            Charles C. Cosby, Jr., for appellant.

            Benjamin H. Katz, Assistant Attorney General (Mark R. Herring,
            Attorney General, on brief), for appellee.


        Osmand G. Harris, Jr. ("appellant"), was indicted by a grand jury in the City of Richmond

for one count of possession of a Schedule I or II controlled substance, with the intent to distribute, in

violation of Code § 18.2-248; one count of possession of a firearm while in possession of a

Schedule I or II controlled substance, with the intent to distribute, in violation of Code

§ 18.2-308.4(B); and one count of carrying a concealed firearm, after having been previously

convicted of a like offense, in violation of Code § 18.2-308.

        Prior to trial, appellant filed a motion to suppress evidence and statements obtained during

his encounter with law enforcement.  The trial court held a hearing on the motion to suppress and

directed the parties to prepare additional argument.[1]  After considering the additional argument, the

trial court granted appellant's motion to suppress the statements he made before law enforcement

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The parties' additional filings on the two-step interrogation issue are not part of the record in this case.

advised him of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). The trial court, however, denied appellant's motion to suppress the statements he made after he was advised of his Miranda rights and the physical evidence obtained from his scooter.[2]

Following a bench trial, appellant was convicted on all three charges. Prior to sentencing, appellant filed a motion to reconsider the suppression issue. The trial court denied appellant's motion for reconsideration and sentenced appellant to twenty years' incarceration with fifteen years suspended.

Appellant now appeals to this Court. He first contends that the trial court erred in denying appellant's motion to suppress his post-Miranda statements, as the Miranda warnings were ineffective where appellant had already made incriminating pre-Miranda statements. Appellant also challenges the sufficiency of the evidence, arguing that his version of the relevant events was more credible than the police officers' version.

### Background

On appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below, and "accord [it] the benefit of all inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004). So viewed, the evidence proved that on October 25, 2013, Richmond police detectives Greg Boyles and Karen Brown were conducting a "buy-bust" operation.[3] The detectives targeted a specific individual identified to them as "Oz" by a confidential informant.

The informant indicated that "Oz" could supply him with an ounce of heroin. Boyles asked the informant to contact "Oz" via speaker phone. Boyles testified that he heard the

---

[2] No transcript of this hearing was filed in the Circuit Court of the City of Richmond. The trial court's order directs only the transcription of an earlier proceeding.

[3] Detective Brown confirmed that a "buy-bust" operation is an effort "to make a purchase of narcotics from somebody and then immediately arrest them."

informant request an ounce of heroin for $1400. The informant and "Oz" agreed to meet at the Southside Plaza in Richmond. The informant described "Oz" as a dark-skinned black male who was approximately six feet tall. He additionally stated that "Oz" typically drove a dark scooter and carried a firearm.

When the detectives and the informant were in place at the Southside Plaza, the informant received a call from "Oz." Boyles testified that he again heard the call through the phone's speaker function. "Oz" indicated he was across the street at the Circle Shopping Center next to the laundromat. The detectives proceeded to the laundromat, where they encountered a man later identified as appellant, standing next to a scooter and wearing a helmet.

As the detectives approached appellant, they perceived what appeared to be a bulge protruding underneath the right side of his jacket. The detectives asked appellant if he was armed. He responded affirmatively and raised his hands in the air, revealing a holstered pistol in his waistband that had been concealed by his jacket. Brown removed the pistol from appellant's holster and inquired whether appellant possessed a permit for carrying a concealed weapon. Appellant indicated that he did not.

Brown secured the weapon, and Boyles handcuffed appellant and informed him that he was being placed in "investigative detention." Before advising appellant of his Miranda rights, Boyles asked appellant whether he possessed "anything else illegal, any other firearms, anything illegal on him or in his scooter." Appellant responded, "I have some in my scooter." Appellant subsequently clarified that there was heroin in the scooter.

In the meantime, Sergeant Michael Lewandowski arrived on scene. Lewandowski testified that when he encountered appellant, appellant was "running off at the mouth, [and] could not be quiet." Lewandowski asked appellant if he had been advised of his Miranda rights. Learning that he had not, the sergeant advised appellant at that time.

- 3 -

Boyles then inquired about the quantity of drugs contained in appellant's scooter, and appellant said it contained an ounce of heroin. Additionally, appellant volunteered that he possessed cocaine at his home. Brown requested the scooter's keys from appellant and found a bag of 28.7 grams of a "tan/brown" substance in the scooter. Subsequent analysis confirmed the substance to be heroin.

At trial, Boyles testified that appellant stated he came to the laundromat for the purpose of "sell[ing the heroin] to a guy he was to meet." Appellant claimed to be a police informant and explained that after the planned transaction, he intended to "turn it in to the police."

In support of his motion to suppress, appellant argued that he was in custody when Boyles asked him if he possessed anything else illegal before advising him of his Miranda rights. Appellant further contended that the Miranda warning Lewandowski provided did not render his subsequent statements and the evidence obtained admissible. Appellant also challenged the reliability of the informant's information and the constitutionality of the search of his scooter.

In response, the Commonwealth argued that, under Oregon v. Elstad, 470 U.S. 298 (1985), a subsequent "Mirandized" statement need not be suppressed simply because an earlier violation took place when obtaining a statement made prior to Miranda warnings. Appellant relied upon Missouri v. Seibert, 542 U.S. 600 (2004), contending that the evidence and statements were inadmissible because the detectives used a "question first" technique.

The trial court found the confidential informant to be reliable. However, the trial court was not prepared to rule on the motion to suppress absent additional argument from the parties on whether probable cause existed to support the search of the scooter and whether Seibert applied under these circumstances. The trial court characterized the circumstances of Seibert as involving a "systematic and exhaustive questioning" that took place before Miranda rights were given. Noting that the police only asked a single question, the trial court distinguished Seibert

- 4 -

from appellant's case. However, as stated above, a transcript of the continuation of the suppression proceedings was not included in the record.

Following appellant's conviction, he filed a motion to reconsider the trial court's denial of the suppression motion. The trial court heard argument on the motion prior to sentencing. Appellant again challenged the reliability of the informant and the constitutionality of the search of the scooter. The Commonwealth addressed the admissibility of appellant's post-<u>Miranda</u> statements, arguing that the facts of the instant case were materially different from those presented in <u>Seibert</u>. The Commonwealth specifically noted that the trial court concluded in the second suppression proceeding that the police had not engaged in a "deliberate tactic to coerce a confession." As to the search of the scooter, the Commonwealth maintained that the "automobile exception" to the warrant requirement applied, given the finding of the informant's reliability and that there was no requirement to demonstrate the presence of exigent circumstances.

The trial court denied appellant's motion to reconsider. The trial court observed:

> I read the cases at the time, I am listening to the argument[, and] I still don't see – you have not pointed out any factors that would lead me to conclude that this was a deliberate attempt to do a two-step process.
>
>   . . . .
>
> I still haven't heard anything that would lead me to believe that the factors would weigh in your favor on that . . . .

Analysis

A. <u>Motion to Suppress</u>

I.

"On appeal of a ruling on a motion to suppress, we view the evidence in the light most favorable to the prevailing party, here the Commonwealth, granting to the evidence all

reasonable inferences deducible therefrom." Cherry v. Commonwealth, 44 Va. App. 347, 356, 605 S.E.2d 297, 301 (2004). "We are bound by the trial court's findings of historical fact unless plainly wrong or without evidence to support them." Id. (quoting McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*)). However, "we review *de novo* the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case." Id.

On appeal, appellant contends that the trial court erred by denying the motion to suppress his statements and the evidence obtained. More specifically, appellant argues the facts of this case are materially indistinguishable from the "question first" procedure employed in Seibert, maintaining that the post-Miranda questions were only a continuation of Boyles' questioning prior to Miranda warnings.

Appellant relies heavily upon Justice Souter's plurality opinion in Seibert, which sets forth the necessary circumstances under which the "question first and Mirandize later" method might still support the intended function of the warning.[4] The plurality in Seibert delineates several relevant factors when considering the effectiveness of post-Miranda statements: (1) the completeness and detail of the questions and answers in the first round of interrogation; (2) the overlapping content of the two statements; (3) the timing and setting of the first and second statements; (4) the continuity of police personnel; and (5) the degree to which the interrogator's

---

[4] In Seibert, 542 U.S. at 604, the arresting officer was instructed by the interviewing officer to refrain from giving Seibert Miranda warnings upon her arrest. Seibert was left alone in an interview room for fifteen to twenty minutes. The interviewing officer then questioned her for thirty to forty minutes regarding the death of a mentally ill teenager living in her home. Seibert eventually admitted that the teenager was meant to die in a staged house fire. After a twenty-minute break, the interviewing officer resumed the encounter after turning on a tape recorder, giving Seibert the Miranda warnings, and obtaining a signed waiver form. He then revisited Seibert's prewarning statements as part of an interrogation technique to "question first, then give the warnings, and then repeat the question" to obtain the same answers given prewarning. Id. at 604-06.

questions treated the second round of questioning as continuous with the first. Seibert, 542 U.S. at 615.

However, in Kuhne v. Commonwealth, 61 Va. App. 79, 733 S.E.2d 667 (2012), this Court adopted the "narrower grounds" articulated in Justice Kennedy's concurrence in Seibert. 61 Va. App. at 91-92, 733 S.E.2d at 672-74.

> [U]nless police deliberately employ the "question first" strategy, the admissibility of postwarning statements is governed by Elstad. If the two-step, question first strategy is employed, postwarning statements that are related to the substance of prewarning statements must be excluded unless police take curative measures before the postwarning statements are made. The net effect of Seibert is to carve out an exception to the Elstad framework for cases in which a law enforcement officer employs a deliberate, two-step strategy to obtain a postwarning confession.

Id. at 91-92, 733 S.E.2d at 674.

Thus, appellant's characterization of the post-Miranda questioning as a continuation of the questioning that preceded the warning is misplaced. The relevant inquiry is whether the questioning prior to Miranda warnings was a deliberate effort by law enforcement to undermine the Miranda safeguards. Appellant fails to give deference to the trial court's factual finding that the officers did not deliberately engage in the impermissible two-step process addressed by Seibert: "deliberately obtain[ing] a confession and then prod[ing] the suspect to repeat the confession following Miranda warnings." Id. at 92, 733 S.E.2d at 674. This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." Id. See United States v. Narvaez-Gomez, 489 F.3d 970, 974 (9th Cir. 2007) (holding that "deliberateness finding" is a factual finding); McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (holding that such finding is binding on appeal unless plainly wrong or without evidence in support).

A reasonable factfinder could have concluded that Boyles's questions prior to and following Miranda warnings did not constitute a deliberate two-part inquiry of the type prohibited under Seibert. Accordingly, the trial court did not err as a matter of law in denying appellant's suppression motion.

II.

Appellant further maintains that, absent his statements, a search of his scooter was impermissible.[5] We disagree. Appellant contends both that the inventory search exception to the Fourth Amendment does not permit a search of the scooter and that Arizona v. Gant, 556 U.S. 332 (2009), offers an independent basis that prohibits such a search.

"As the United States Supreme Court has explained, if an officer . . . has probable cause to believe that [a] vehicle contains evidence of a crime, then a warrantless search of that vehicle is permissible under the automobile exception." Duncan v. Commonwealth, 55 Va. App. 175, 179-80, 684 S.E.2d 838, 840 (2009) (citing Maryland v. Dyson, 527 U.S. 465, 466-67 (1999)). "The Supreme Court specifically pointed out in Gant that, if an officer has probable cause to believe that a vehicle contains evidence of a crime, then the officer may search that vehicle without a warrant." Id. at 181, 684 S.E.2d at 841 (citing Gant, 556 U.S. at 346).

As long as there is probable cause, this automobile exception "'authorizes a search of any area of the vehicle in which the evidence might be found' . . . [and the] authority to search need not be incident to arrest or in any way related to a recent occupant." Armstead v. Commonwealth, 56 Va. App. 569, 576 n.4, 695 S.E.2d 561, 564 n.4 (2010) (quoting Gant, 556

---

[5] "[A] procedural Miranda violation differs in significant respects from violations of the Fourth Amendment." Elstad, 470 U.S. at 306. "A suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite Miranda warnings." Jenkins v. Commonwealth, 244 Va. 445, 455, 423 S.E.2d 360, 367 (1992) (quoting Elstad, 470 U.S. at 318). See also Pruett v. Commonwealth, 232 Va. 266, 273, 351 S.E.2d 1, 5 (1986). Instead, the question becomes whether the subsequent statement is "knowingly and voluntarily made." Elstad, 470 U.S. at 309.

U.S. at 347).  Under the circumstances in the present case, we conclude that the officers had probable cause to search appellant's scooter.  The informant, who the trial court credited as reliable, indicated that appellant was in possession of heroin.  Further, appellant himself stated that there was heroin secreted within the scooter.  Thus, the trial court properly denied the motion to suppress the evidence from the scooter.

### B.  Sufficiency of the Evidence

Appellant additionally contends on appeal that his conviction was not supported by sufficient evidence.  In support of his argument, appellant reiterates his testimony that the scooter did not belong to him and that he was merely standing next to it at the time the detectives confronted him.  He places significance on the Commonwealth's failure to introduce either a helmet or keys for the scooter at trial.  Appellant argues that this renders his testimony more credible than that offered by the officers.

On appeal, the evidence must be viewed in the "light most favorable" to the Commonwealth.  Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citation omitted).  This principle requires the appellate court to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom."  Kelly v. Commonwealth, 41 Va. App. 250, 254, 584 S.E.2d 444, 446 (2003) (*en banc*) (citation omitted).

"In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt."  Flanagan v. Commonwealth, 58 Va. App. 681, 702, 714 S.E.2d 212, 222 (2011) (quoting Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998)).

The ability to segregate a witness' testimony into the believable, partly believable, or wholly unbelievable is intrinsic to the task of the factfinder.  Breeden v. Commonwealth, 43

Va. App. 169, 180, 596 S.E.2d 563, 568 (2004) (citing Seaton v. Commonwealth, 42 Va. App. 739, 751, 595 S.E.2d 9, 15 (2004)).  See also Commonwealth v. McNeal, 282 Va. 16, 22, 710 S.E.2d 733, 736 (2011) ("[A] fact finder's evaluations of credibility are not limited to choosing between competing accounts offered by different witnesses, but often include . . . resolving conflicts in a single witness' testimony, accepting that part of the testimony it deems credible and rejecting the portion it deems incredible." (internal citations omitted)); Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986) (recognizing that the finder of fact has "the right to reject that part of the evidence believed . . . to be untrue and to accept that found . . . to be true").

Appellant disregards the trial court's rejection of his testimony at the conclusion of the suppression hearing.  The trial court stated, "[q]uite frankly, the only thing that the defendant testified to as far as facts that I find credible, given the consistency of all of the statements of the officers is that the sidearm had a flashlight and the chaining of the scooter to the pole.  Basically everything else I find incredible."  Following appellant's trial, the trial court explicitly found the officers' testimony to be "more credible."

The evidence in the record demonstrated that the confidential informant arranged the purchase of an ounce of heroin from "Oz," who could be found at the laundromat, and that "Oz" regularly drove a scooter and carried a firearm.  The trial court could reasonably conclude that appellant, Osmand Harris, who was found in the same location, carrying a firearm, and standing next to a scooter containing heroin, was the individual with whom the informant arranged the sale.  This conclusion was corroborated by appellant's own statements.  He acknowledged to the detectives that he went to the laundromat for the purpose of "sell[ing the heroin] to a guy he was to meet."  "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind

irresistibly to a conclusion." <u>Hudson</u>, 265 Va. at 514, 578 S.E.2d at 786 (citations omitted). The

trial court's determination of appellant's guilt cannot be said to be plainly wrong or without

evidence to support it.

<u>Conclusion</u>

For these reasons, we hold the trial court did not err in denying appellant's motion to

suppress. We further hold the trial court did not err in finding the evidence sufficient beyond a

reasonable doubt to support his convictions addressed herein. Accordingly, we affirm

appellant's convictions.

<u>Affirmed.</u>